UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO MACIEL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEAPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>　　　　　Defendants. | **CASE NO. 1:16-cv-00996-DAD-MJS (PC)**<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>**(ECF No. 12)**<br><br>**THIRTY DAY DEADLINE** |

Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff has declined Magistrate Judge jurisdiction. (ECF No. 7.) No other parties have appeared.

On November 28, 2016, this Court dismissed Plaintiff's complaint with leave to amend. (ECF No. 9.) Plaintiff's first amended complaint is now before the Court for screening. (ECF No. 12.)

**I.　　Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail "to state a claim upon which relief may be granted," or that "seek monetary relief from a defendant who is

immune from such relief." 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.     Pleading Standard

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights conferred elsewhere.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979)).

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution and laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); see also Ketchum v. Cnty. of Alameda, 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id.

### III. Plaintiff's Allegations

At all times relevant to this suit, Plaintiff was housed at Pleasant Valley State Prison ("PVSP") in Coalinga, California. He names the following Defendants: Edmund G. Brown, Governor of California; Timothy Lockwood, Chief Regulation and Policy Manager for the California Department of Corrections and Rehabilitation ("CDCR"); Jeffrey Beard, CDCR Secretary; Matthew Cate, former CDCR Secretary; and Does 1-10, health professionals for the CDCR. Each Defendant is sued in his or her individual and official capacities.

#### A. Background Information Related to Valley Fever

The information contained herein is drawn from Plaintiff's first amended complaint; Plaintiff does not state the source of his information. However, Plaintiff's facts are largely verified by the Centers for Disease Control and Prevention.[1]

PVSP is located in the San Joaquin Valley of California, where there exists a severe risk of exposure to the coccidioidomycosis virus, commonly referred to as "Valley Fever" or "cocci." Valley Fever is contracted through the inhalation of a fungus called Coccidioides Immitis, which naturally occurs in the soil. Once the spores of the fungus are inhaled, they lodge themselves in the victim's respiratory system. From there, the virus can spread throughout other tissues and organs, resulting in "disseminated Valley Fever."

The majority of those individuals infected display minor symptoms that resolve themselves within a few weeks. About 1-5% of those infected, however, will develop disseminated Valley Fever, a serious infection that is progressive, painful, and debilitating, and if left untreated may lead to meningitis and death. Once an individual has been affected by disseminated Valley Fever, there is no cure besides excision of the

---

[1] *Valley Fever (Coccidioidomycosis)*, https://www.cdc.gov/fungal/diseases/coccidioidomycosis/index.html (last updated Dec. 12, 2016.)

affected tissue and bone. Certain medications may manage symptoms, but they are costly and must be taken daily for life.

Asians, Hispanics, African-Americans, and American Indians, as well as individuals with a compromised immune system, face an increased risk of infection with Valley Fever. They are also more likely to develop disseminated Valley Fever. There are several preventative measures that may be taken to help combat the spread of the cocci fungus spores, such as landscaping, paving, soil stabilization, restricting construction and excavation, limiting outdoor time in windy conditions, and wearing face masks when outside. Experts also recommend screening out at-risk inmates and transferring them out of San Joaquin Valley prisons.

**B.     Documentation of the Valley Fever Risks**

California health officials have known about the prevalence of Valley Fever in the San Joaquin Valley for over fifty years.[2] Despite this, the CDCR built eight prisons, including PVSP, in the hyper-endemic San Joaquin Valley. For more than twenty years, the CDCR has been housing inmates at high risk of contracting Valley Fever in these prisons in overcrowded conditions with no remedial measures in place to reduce the risk of exposure to the cocci fungus. In November 2004, Dr. Renee Kanan, Deputy Director of Health Care Services at CDCR, wrote a memorandum to all CDCR health care providers regarding Valley Fever. The memorandum stated that PVSP and other prisons were located in a region especially susceptible to Valley Fever, and that high winds and construction activity could disturb the fungus so as to make it airborne and subject to being inhaled. The memorandum also stated that the risk of infection for Valley Fever was highest among individuals of American Indian, Asian, African-American, or Hispanic descent, as well as individuals with a compromised immune system. This memorandum was and is "widely available" to state officials.

---

[2] Plaintiff cites to numerous studies conducted by the United States Centers for Disease Control and Prevention, the National Foundation for Infectious Disease, and medical professionals in support of this assertion. The Court will not list these sources herein, but rather will accept Plaintiff's statements as true, as it must at the pleading stage. Iqbal, 556 U.S. at 678.

4

An August 3, 2006 internal memorandum from the director of Adult Institutions at the CDCR further confirmed that, at the time, CDCR officials knew inmates in the San Joaquin Valley faced an increased risk of contracting Valley Fever. Another internal memorandum, dated October 27, 2006 and distributed to all administrative personnel, described the epidemic infection rates of Valley Fever for California inmates between the years of 2001 to 2006. A November 20, 2007 memorandum distributed to CDCR staff also apprised Defendants of the ongoing Valley Fever epidemic in the eight affected prisons, noting the significant increase in Valley Fever infections among San Joaquin Valley inmates in the year 2005. The memorandum also outlined several mitigation techniques to help reduce Valley Fever infections, such as planting grass, wearing face masks, and transferring at-risk inmates out of San Joaquin Valley prisons. Finally, in April 2012 the California Correctional Health Care Services ("CCHCS") released a report entitled "Coccidioidomycosis in California's Adult Prisons, 2006-2010," which concluded that the incidence of Valley Fever had been increasing in some prisons. The report also noted that the continued incarceration of individuals in prisons located in endemic areas will lead to a stream of costly Valley Fever cases. The risk of infection at two prisons, Avenal and PVSP, was especially acute. Plaintiff reports the infection rate at PVSP was approximately 701[3] cases for every 100,000 inmates. Between 2006 and 2012, 1,800 inmates became infected with Valley Fever at PVSP.

The CCHCS report found that between 2006 and 2010, the CDCR did nothing that had any effect on the rate of Valley Fever at prisons located in the San Joaquin Valley. Approximately 36 inmates incarcerated at prisons in the San Joaquin Valley have died of Valley Fever between the years of 2006 and 2011.

In 2008, in response to an executive order issued by then-Governor Arnold Schwarzenegger directing California agencies to restrict water usage in light of the severe drought, CDCR officials stopped watering and maintaining grass cover at PVSP,

---

[3] Plaintiff also reports the infection rate to be 7,011 cases per 100,000 inmates.

5

thereby significantly increasing the risk that PVSP inmates would contract Valley Fever. Governor Brown continued this directive when he took office, despite knowing that grass cover was the only remedial measure in place at PVSP to reduce the spread of the virus.

Each Defendant was aware that housing inmates in the hyper-endemic region of the San Joaquin Valley posed a substantially increased risk that these inmates would develop Valley Fever. Defendants were aware that individuals of Hispanic descent such as Plaintiff were at higher risk of developing disseminated Valley Fever. Defendants were further aware that Plaintiff could have been tested for "host-immunity" to determine whether Plaintiff could be safely housed in PVSP, but did not test him. Defendants' failure to house Plaintiff at a different institution, coupled with their failure to implement the most basic remedial measures to protect inmates, constituted a violation of the Eighth Amendment. Plaintiff alleges Defendants failed to disclose to Plaintiff essential information regarding the risk of Valley Fever. It does not appear that Plaintiff actually contracted Valley Fever; instead he seeks compensatory and punitive damages because of his supposed future risk of contracting Valley Fever.

**IV.   Analysis**

    **A.   Linkage**

Under § 1983, in order to state a claim against an official in his personal capacity, a plaintiff must demonstrate that each named defendant *personally* participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77; Simmons, 609 F.3d 1011, 1020-21(9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at

6

1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Lemire v. Cal. Dept. of Corrections & Rehabilitation, 726 F.3d 1062, 1074-75 (9th Cir. 2013) ("A prison official in a supervisory position may be held liable under § 1983 . . . 'if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'") (quoting Lolli v. Cty. of Orange, 351 F.3d 410, 418 (9th Cir. 2003)); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Where a plaintiff alleges a defendant failed to intervene to stop the abuses of subordinate staff, he must allege that the supervisor defendant failed to intervene after being placed on notice of ongoing constitutional violations by subordinate staff. Starr, 652 F.3d at 1205-08.

Other than Plaintiff's allegation that Governor Brown failed to rescind the water restriction directive, Plaintiff provides no facts demonstrating what each Defendant personally did or did not do to violate his rights. Indeed, outside of the caption, Plaintiff's complaint does not list any Defendant besides Governor Brown by name. Rather, Plaintiff groups Defendants, all high-ranking state and CDCR officials and unidentified health professionals, together as individuals who "knew" of the risk Plaintiff supposedly faced but failed to take steps to abate it.

Plaintiff will be given one final opportunity to cure this pleading deficiency. If he undertakes to do so, he must include more than a blanket statement that Defendants "knew" of the dangers posed by Valley Fever and did nothing. He must explain how each individual knew, whether by virtue of his or her position or otherwise, of the danger faced by Plaintiff, was in a position where he or she could have done something about it, and yet knowingly took no action.

**B.     Doe Defendants**

Plaintiff names Does 1-10, health professionals for the CDCR, as Defendants. He does not state the positions they are employed in, their duties and responsibilities, or how they are in any way connected to Plaintiff.

Generally, the use of Doe defendants is disfavored in federal court. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting Gillespie v. Civiletti, 629 E.2d 637, 642 (9th Cir. 1980)). The Court cannot order the Marshal to serve process on any Doe defendants until such defendants have been identified. See, e.g., Castaneda v. Foston, No. 1:12-cv-00026 WL 4816216, at *3 (E.D. Cal. Sept. 6, 2013). Plaintiff may, under certain circumstances, be given the opportunity to identify unknown defendants through discovery prior to service. Id. (plaintiff must be afforded an opportunity to identify unknown defendants through discovery unless it is clear that discovery would not uncover their identities). However, in order to proceed to discovery, Plaintiff must first state a cognizable claim. Additionally, Plaintiff must distinguish between Doe defendants by, for example, referring to them as "John Doe 2," "John Doe 3," and so on, and describe what each did or failed to do to violate Plaintiff's rights.  See Ingram v. Brewer, No. 1:07-cv-00176-OWW-DLB, 2009 WL 89189 (E.D. Cal. January 12, 2009) ("In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights."). Plaintiff's amended complaint must describe these Doe Defendants at a higher level of specificity than simply "health professionals."

**C.     Official Capacity Claims**

Plaintiff sues all Defendants in both their personal and official capacities, and seeks only monetary damages. As Plaintiff was previously advised, he cannot recover money damages from individuals sued in their official capacities, Aholelei v. Dept. of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted), because official capacity suits may seek only prospective or injunctive relief. See Wolfson v. Brammer,

616 F.3d 1045, 1065-66 (9th Cir. 2010). Plaintiff's complaint does not include a prayer for prospective relief. Therefore, his official capacity claims will be dismissed, albeit with one final opportunity to amend.

### D. Eighth Amendment Conditions of Confinement

#### a. Legal Standard

The Eighth Amendment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).

Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and quotations omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. See, e.g., Farmer v. Brennan, 511 U.S. 825, 847 (1994); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Subjective deliberate indifference involves two parts. Lemire v. Cal. Dept. of Corr. & Rehab., 726 F.3d 1062, 1078 (9th Cir. 2013). Plaintiff must demonstrate first that the risk was obvious or provide other circumstantial evidence that Defendants were aware of the substantial risk to his health or safety, and second that there was no reasonable justification for exposing him to that risk. Id. (citing Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010)) (quotation marks omitted). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not

only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

### b. Analysis

It is uncontroverted that Valley Fever can pose a serious risk to human health. See Edison v. United States, 822 F.3d 510, 514 (9th Cir. May 20, 2016) (citing *Morbidity and Mortality Weekly Report: Coccidioidomycosis—California, 1991-1993*, Ctr. for Disease Control & Prevention (Jun. 17, 1994), http://www.cdc.gov/mmwr/preview/mmwrhtml/00031453.htm); Zurich Ins. Co. v. Sigourney, 278 F.2d 826, 828 (9th Cir. 1960) ("There seems to be no doubt that appellee Sigourney is now totally disabled from a disease known as coccidioidomycosis— called on the West Coast 'San Joaquin Valley Fever,' since it is endemic to that area of California."); see also Crim v. Int'l Harvester Co., 646 F.2d 161, 162 (5th Cir. May 21, 1981).

Neither the Supreme Court nor the Ninth Circuit have decided whether knowingly housing inmates in areas endemic for Valley Fever, a potentially life-threatening illness caused by a soil-borne fungus, constitutes an Eighth Amendment violation. See Jackson v. Brown, 134 F. Supp. 3d 1237, 1240 (E.D. Cal. Sept. 28, 2015) (citing Jones v. Hartley, No. 1:13-cv-1590-AWI-GSA, 2015 WL 1276708, at *2-3 (E.D. Cal. Mar. 19, 2015) (collecting cases)). However, recognizing that Valley Fever poses a serious risk to human health, and accepting the premise that certain individuals are more susceptible to infection than others, this Court proceeds on the presumption that, where Plaintiff demonstrates Defendants knew of but were deliberately indifferent to a substantial risk that Plaintiff would contract Valley Fever if housed at PVSP, he has sufficiently alleged a cognizable Eighth Amendment claim. See Allen v. Kramer, No. 15-cv-01609-DAD-MJS, 2016 WL 4613360, at *6 (E.D. Cal. Aug. 17, 2016) ("Plaintiff has a right to be free from exposure to an environmental hazard that poses an unreasonable risk of serious

damage to his health whether because the levels of that environmental hazard are too high for anyone or because Plaintiff has a particular susceptibility) (relying on Helling v. McKinney, 509 U.S. 25, 33-35 (1993)), *findings and recommendations adopted*, Order Adopting, Allen v. Kramer, No. 15-cv-01609-DAD-MJS, E.D. Cal. Nov. 23, 2016, ECF No. 13. Therefore, in order to state a claim, Plaintiff must allege facts (not mere assumption or speculation) reflecting that each Defendant was aware that Plaintiff, due to his race or other personal characteristic, was at high risk of contracting Valley Fever; that PVSP situated and managed so as to expose its inmates to excessively high or dangerous levels of cocci fungus spores, and Defendant(s) ignored that risk and failed to take available steps to protect Plaintiff from it; and that the result was that Plaintiff did in fact contract Valley Fever or suffer some other cognizable harm. For the reasons set forth below, the Court will recommend Plaintiff's complaint be dismissed with leave to amend.

Even assuming that Plaintiff, a Hispanic man housed in an area endemic for Valley Fever, faced a substantial risk of contracting the disease, he has not demonstrated that any Defendant was deliberately indifferent to that risk. Plaintiff's complaint lists various publications and memoranda related to Valley Fever in California, seemingly as proof that Defendants were on notice that Plaintiff faced a substantial risk of harm. However, Plaintiff's "reliance on publications or events that are related to Valley Fever, without any factual allegations to link them to . . . an individual defendant is not sufficient to infer knowledge to him. The liberal standards that apply to civil rights complaints may not supply essential elements of the claim that were not pled." Jackson v. California, No. 1:13-CV-01055-LJO-SAB, 2015 WL 2414938, at *8 (E.D. Cal. May 20, 2015), *report and recommendation adopted sub nom.* Jackson v. Brown, 134 F. Supp. 3d 1237 (E.D. Cal. 2015). Plaintiff's conclusory allegation that there existed documents describing the dangers of Valley Fever is insufficient to impute knowledge of the information contained therein to any Defendant. Indeed, it is not apparent that any

Defendant was even employed by the state at the time these publications were disseminated. As discussed above, Plaintiff must plead affirmative facts linking each Defendant to the alleged violation of his rights.

As to Governor Brown, the only Defendant mentioned by name, Plaintiff fails to establish that his decision to continue the water conservation directive constituted deliberate indifference to Plaintiff's needs. Plaintiff will be given leave to amend.

## V.     Conclusion and Order

Plaintiff's complaint will be dismissed for failure to state a claim upon which relief may be granted. He will be given thirty days from the date of this order to amend his complaint if he believes, in good faith, he can cure the identified deficiencies. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  In the alternative, Plaintiff may file a notice of voluntary dismissal with the Court.  If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but under section 1983, it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights and liability may not be imposed on supervisory personnel under the theory of *respondeat superior*. Iqbal, 556 U.S. at 676-77; Starr, 652 F.3d at 1205-07.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's first amended complaint (ECF No. 12) is dismissed with leave to amend.
2. The Clerk of Court shall send Plaintiff a blank civil rights amended complaint form and a copy of his complaint dated February 6, 2017.
3. Within thirty (30) days from the date of service of this order, Plaintiff must either:
   a. File an amended complaint curing the deficiencies identified by the Court in this order, or
   b. File a notice of voluntary dismissal; and
4. If Plaintiff fails to file an amended complaint or notify the Court in writing that he wishes to voluntarily dismiss this lawsuit, the undersigned will recommend this action be dismissed for failure to obey a Court order and failure to state a claim, subject to the "three strikes" provision of 28 U.S.C. § 1915(g).

IT IS SO ORDERED.

Dated:   March 23, 2017             /s/ *Michael J. Seng*
                                    UNITED STATES MAGISTRATE JUDGE