UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO MACIEL,<br><br>  Plaintiff,<br><br>v.<br><br>CALIFORNIA DEAPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>  Defendants. | **CASE NO. 1:16-cv-00996-DAD-MJS (PC)**<br><br>**ORDER GRANTING MOTION FOR EXTENSION OF TIME TO FILE SECOND AMENDED COMPLAINT**<br><br>**(ECF No. 18)**<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CASE FOR FAILURE TO STATE A CLAIM**<br><br>**(ECF No. 19)**<br><br>**FOURTEEN DAY DEADLINE** |

Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff has declined Magistrate Judge jurisdiction. (ECF No. 7.) No other parties have appeared.

**I.    Procedural History**

Plaintiff initiated this action on July 12, 2016. (ECF No. 1.) On March 23, 2017, the Court dismissed Plaintiff's first amended complaint with thirty days leave to amend. (ECF No. 13.) Plaintiff requested (ECF Nos. 14 & 16) and was granted (ECF Nos. 15 & 17) two extensions of time to file his second amended complaint. On August 3, 2017,

having yet to receive Plaintiff's second amended complaint, the Court issued an order to show cause why Plaintiff's case should not be dismissed for failure to obey a Court order. (ECF No. 20.) After Plaintiff's second amended complaint was filed with the Court (ECF No. 19) the Court discharged its order to show cause (ECF No. 21.)

## II.  Motion to Amend

Concurrent with his second amended complaint, Plaintiff filed a motion seeking leave to file said complaint. (ECF No. 18.) As Plaintiff was already granted leave to file a second amended complaint (ECF No. 13) this motion is appropriately construed as a third request for an extension of time to file his second amended complaint, and on that ground will be granted.

## III.  Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail "to state a claim upon which relief may be granted," or that "seek monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV.  Pleading Standard

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights conferred elsewhere.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979)).

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution and laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); see also Ketchum v. Cnty. of Alameda, 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id.

## V. Plaintiff's Allegations

At all times relevant to this suit, Plaintiff was housed at Pleasant Valley State Prison ("PVSP") in Coalinga, California. He names the following Defendants: Edmund G. Brown, Governor of California; Scott Kernan, CDCR Secretary; Jeffrey Beard, former CDCR Secretary; Matthew Cate, former CDCR Secretary; Scott Frauenheim, Warden of PVSP; Paul D. Brazelton, former Warden of PVSP; Donald B. McElroy, Chief Medical Officer at PVSP; O. Onyeje, Chief Physician at PVSP; and J. Chokatos, M.D.

Defendants Brown and Kernan are sued in their individual and official capacities. Defendants Beard, Cate, Frauenheim, Brazelton, McElroy, Onyeje, and Chokatos are sued in their individual capacities only.

Plaintiff's essential allegations can be summarized as follows:

The coccidioidomycosis virus, commonly referred to as "Valley Fever,"" is a serious disease contracted through the inhalation of a fungus called Coccidioides

3

Immitis. Once the spores of the fungus are inhaled, they lodge themselves in the victim's respiratory system. From there, the virus can spread throughout other tissues and organs, resulting in "disseminated Valley Fever." The fungus is extremely prevalent in the soil of the San Joaquin Valley of California.

The majority of individuals infected with Valley Fever display minor symptoms that resolve themselves within a few weeks. About 1-5% of those infected, however, will develop disseminated Valley Fever, a serious infection that is progressive, painful, and debilitating, and if left untreated may lead to meningitis and death. Once an individual has been affected by disseminated Valley Fever, there is no cure besides excision of the affected tissue and bone. Certain medications may manage symptoms, but they are costly and must be taken daily for life.

California officials have known about the prevalence of Valley Fever in the San Joaquin Valley for more than fifty years.[1]

Filipinos, Hispanics, African-Americans, and American Indians, as well as individuals with a compromised immune system, face an increased risk of infection with Valley Fever. They are also more likely to develop disseminated Valley Fever. Experts, including those within the CDCR, recommend numerous preventative measures to help combat the spread of the cocci fungus spores, by, for example, adding landscaping or paving, stabilizing the soil, restricting construction and excavation, limiting prisoner time outdoors in windy conditions, and providing face masks for prisoners when outside. Experts also recommend screening out at-risk inmates and transferring them out of San Joaquin Valley prisons.

In 2008, in response to an executive order issued by then-Governor Arnold Schwarzenegger directing California agencies to restrict water usage in light of the

---

[1] Plaintiff asks the Court to take judicial notice of information included in Exhibit A to his FAC (ECF No. 12), including statistics and reports drawn from various memoranda on Valley Fever. Because the Court is unable to conclude that the facts in the exhibit are not subject to reasonable dispute, it will not take judicial notice under Fed. R. Evid. 201. Moreover, Plaintiff was advised that his amended complaint had to be complete in itself <u>without reference to any prior pleading</u>. (See ECF No. 13 at 12.) Thus, the Court will disregard references to earlier versions of his complaint.

4

severe drought, CDCR officials stopped watering and maintaining grass cover at PVSP, thereby significantly increasing the risk that PVSP inmates would contract Valley Fever. Governor Brown continued this directive when he took office, despite knowing that grass cover was the only remedial measure in place at PVSP to reduce the spread of the virus.

Each Defendant was aware that housing inmates in the hyper-endemic region of the San Joaquin Valley posed a substantially increased risk that these inmates would develop Valley Fever. Defendants were aware that individuals of Hispanic descent such as Plaintiff were at higher risk of developing disseminated Valley Fever. Defendants were further aware that Plaintiff could have been tested for "host-immunity" to determine whether he could be safely housed in PVSP. Despite knowing this, Defendants failed to so test Plaintiff and caused him to be transferred to PVSP, where he contracted Valley Fever. Defendants also failed to disclose to Plaintiff the risks he faced if transferred to PVSP.

Defendant Brown, as the Governor of California, is responsible for supervising and overseeing the conduct of his subordinates. He is the ultimate authority over the care and treatment of California prisoners, including Plaintiff.

Defendant Kernan, as Secretary of the CDCR, oversees the management and operation of all prison facilities and makes decisions regarding staff deployment and training directly impacting Plaintiff's ability to receive adequate medical care. As such, he should have known that the presence of Valley Fever in and around CDCR facilities posed a substantial risk to prisoners, including Plaintiff.

Defendants Beard and Cate, as former Secretaries of the CDCR, knew or should have known that the presence of Valley Fever in and around CDCR facilities posed a substantial risk to prisoners, including Plaintiff.

Defendant Frauenheim, as Warden of PVSP, was responsible for the health and welfare of the prisoners housed in the prison, including Plaintiff. He knew or should have

known that the presence of Valley Fever in and around PVSP posed a substantial risk to Plaintiff and other inmates.

Defendant Brazelton, as former Warden of PVSP, knew or should have known that the presence of Valley Fever in and around PVSP posed a substantial risk to Plaintiff and other inmates.

Defendant McElroy, as medical director at PVSP, is responsible for the health of the inmates at PVSP.

Defendant Onyeje, as the chief physician and surgeon at PVSP, should have known that the presence of Valley Fever in and around PVSP posed a substantial risk to Plaintiff and other inmates.

Defendant Chokatos, as a medical doctor at PVSP, was responsible for Plaintiff's care. He knew or should have known that the presence of Valley Fever at PVSP posed a substantial risk to Plaintiff and other inmates.

Plaintiff alleges violations of the Eighth Amendment's cruel and unusual punishments clause, as well as a violation of the Fourteenth Amendment Equal Protection clause by Defendants Brown, Kernan, Beard, Cate, Frauenheim and Brazelton for transferring African-American and Filipino inmates out of PVSP while forcing Hispanic inmates to remain. He seeks only monetary damages.

**VI.     Analysis**

For the reasons set forth below, the Court will recommend Plaintiff's case be dismissed without further leave to amend.

**A.     Linkage**

Under § 1983, in order to state a claim against an official in his personal capacity, a plaintiff must demonstrate that each named defendant *personally* participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77; Simmons, 609 F.3d 1011, 1020-21(9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff may not attribute liability to a

group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235.  Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Lemire v. Cal. Dept. of Corrections & Rehabilitation, 726 F.3d 1062, 1074-75 (9th Cir. 2013) ("A prison official in a supervisory position may be held liable under § 1983 . . . 'if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'") (quoting Lolli v. Cty. of Orange, 351 F.3d 410, 418 (9th Cir. 2003)); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Where a plaintiff alleges a defendant failed to intervene to stop the abuses of subordinate staff, he must allege that the supervisor defendant failed to intervene after being placed on notice of ongoing constitutional violations by subordinate staff.  Starr, 652 F.3d at 1205-08.

Other than Plaintiff's allegation that Governor Brown failed to rescind the water restriction directive, Plaintiff alleges nothing to indicate what he feels each Defendant personally did or did not do to violate his rights. Plaintiff was advised that he must include more than a blanket statement that Defendants "knew" of the dangers posed by Valley Fever and did nothing.  He must explain how each individual knew, whether by virtue of his or her position or otherwise, of the danger faced by Plaintiff, was in a position where he or she could have done something about it, and yet knowingly took no action or took actions that he or she knew would harm Plaintiff. The instant complaint adds little; it broadly alleges each was responsible for the health and well-being of PVSP

7

inmates, knew or should have known of the risks posed by Valley Fever, failed to ameliorate those risks, and as a result caused Plaintiff to contract Valley Fever. As Plaintiff has been advised, such conclusory allegations are insufficient to place a Defendant on notice of his alleged violations.

Plaintiff twice before was advised of what he must plead to assert a cognizable claim in a case such as this, and yet he persists here in alleging nothing more than that the various Defendants should have known of the risk and should have done something about it. It is reasonable to conclude that he is unable to cure the deficiencies and plead more specifically which Defendants knew of the risk, how they knew of it, and that each could have done something about it and yet chose to do nothing. No useful purpose would be served by again pointing out the same deficiencies and pleading requirements and giving yet another opportunity to try to state a cognizable claim. Plaintiff should not be given further leave to amend.

### B. Official Capacity Claims

Plaintiff was previously advised that he cannot recover money damages from individuals sued in their official capacities. (See ECF No. 13 at 8-9.) (citing Aholelei v. Dept. of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) and Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010). Therefore, his official capacity claims will be dismissed. As Plaintiff was advised of this deficiency and did not correct it, he should not be given further leave to amend.

### C. Eighth Amendment Conditions of Confinement

The standards for an Eighth Amendment Claim are set forth in detail in the prior screening order and will not be repeated herein. (ECF No. 13 at 9-10.)

As discussed in the Court's prior screening order, it is uncontroverted that Valley Fever can pose a serious risk to human health. (Id. at 10.) Plaintiff's allegations are sufficient to establish that Plaintiff suffered from a serious medical condition when he contracted Valley Fever.

This Court proceeds on the presumption that, where a Plaintiff demonstrates Defendants knew of but were deliberately indifferent to a substantial risk that Plaintiff would contract Valley Fever if housed at PVSP, he has sufficiently alleged a cognizable Eighth Amendment claim. See Allen v. Kramer, No. 15-cv-01609-DAD-MJS, 2016 WL 4613360, at *6 (E.D. Cal. Aug. 17, 2016) ("Plaintiff has a right to be free from exposure to an environmental hazard that poses an unreasonable risk of serious damage to his health whether because the levels of that environmental hazard are too high for anyone or because Plaintiff has a particular susceptibility) (relying on Helling v. McKinney, 509 U.S. 25, 33-35 (1993)), *findings and recommendations adopted*, Order Adopting, Allen v. Kramer, No. 15-cv-01609-DAD-MJS, E.D. Cal. Nov. 23, 2016, ECF No. 13. Therefore, in order to state a claim, Plaintiff must allege facts (not mere assumption or speculation) reflecting that each Defendant was aware that Plaintiff, due to his race or other personal characteristic, was at high risk of contracting Valley Fever; that PVSP was situated and managed so as to expose its inmates to excessively high or dangerous levels of cocci fungus spores; that each Defendant could have but failed to take available steps to protect Plaintiff from the spores; and that the result was that Plaintiff did in fact contract Valley Fever or suffer some other cognizable harm.

Plaintiff identifies several instances of what he considers deliberate indifference on the part of Defendants, including: 1) his transfer to PVSP, a prison located in an area endemic for Valley Fever, even though he is Hispanic and therefore more susceptible to Valley Fever; 2) the lack of remedial measures in place at PVSP to reduce the spread of the fungus that causes Valley Fever; 3) the failure of Defendants to maintain, as the sole remedial measure in place at PVSP, grass ground cover; 4) the failure to warn Plaintiff of the risk he faced from Valley Fever; and 5) the failure to test Plaintiff for "host-immunity" before he was transferred to PVSP. However, as noted above, Plaintiff continues to put forth nothing more than speculative, conclusory allegations that each Defendant, by virtue of his position of authority and control, knew of the risks Plaintiff faced from Valley

Fever and failed to abate them. Such speculation, essentially a claim that "surely they must have known," is insufficient. Except as to Governor Brown, Plaintiff does not link an instance of deliberate indifference to any particular person, and, as to the Governor, the decision to continue water restrictions in a severe drought does not reflect deliberate indifference to the possibility Plaintiff might contract Valley Fever. Again, Plaintiff fails to allege a basis for attributing actual knowledge of risk to any one Defendant or allege a basis for alleging that any one of them had the authority or otherwise was in a position to take measures to protect Plaintiff from the risk.

This claim should be dismissed. As further leave to amend would be futile, it will be denied.

### D. Fourteenth Amendment Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An Equal Protection claim may be established in two ways. The first method requires a plaintiff to show that the defendant has intentionally discriminated against the plaintiff on the basis of the plaintiff's membership in a protected class. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001). The second requires that Plaintiff have received disparate treatment compared to other similarly situated inmates without a rational basis for that difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). For either theory, Plaintiff must show evidence of discriminatory intent. See Washington v. Davis, 426 U.S. 229, 239-40 (1976); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003).

Plaintiff's Equal Protection claim is based on the theory that prison officials transferred African-American and Filipino inmates out of PVSP but did not transfer out the Hispanic inmates. Aside from the fact that Plaintiff fails to link any individual Defendant or Defendants to these actions, his allegations are vague and conclusory.

The Equal Protection claim should be dismissed as well.

**VII. Conclusion**

Plaintiff's second amended complaint fails to state a claim, and the Court finds that granting further leave to amend would be futile.

Based on the foregoing, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for an extension to file a second amended complaint (ECF No. 18) is GRANTED;

And IT IS HEREBY RECOMMENDED THAT:

2. This case be DISMISSED, with prejudice, for failure to state a claim.

The findings and recommendation are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with the findings and recommendation, Plaintiff may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: September 27, 2017      /s/ *Michael J. Seng*
　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE